United States District Court
Southern District of Texas
**ENTERED**
January 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-15-060-02 |
| SONNY FLOYD PERVIS | § | |

### MEMORANDUM OPINION AND ORDER

The defendant, Sonny Floyd Pervis (Register No. 82432-379), is currently serving a term of 485 months' confinement in the United States Bureau of Prisons as the result of his conviction for bank robbery and firearms offenses. See Judgment in a Criminal Case, Docket Entry No. 434, pp. 1-2, 3. Now pending before the court is Pervis's Motion for Compassionate Release/Reduction of Sentence Pursuant to the First Step [Act] Sec. 605 under Title 18 U.S.C. [§] 3582(c)(1)(A) ("Defendant's Motion") (Docket Entry No. 568). The government has filed more than one response (Docket Entry Nos. 570, 593). After carefully considering the entire record and the applicable law, the court will deny Defendant's Motion for the reasons explained below.

### I. Background

On February 4, 2015, a federal grand jury returned an indictment against Pervis and several co-defendants in connection

with the armed robbery of a local credit union.[1] On June 9, 2016, the grand jury returned a second superseding indictment charging Pervis and co-defendant Raynard Gray with two counts of bank robbery under 18 U.S.C. § 2113(a) (counts one and three), carrying and using a firearm in relation to a "crime of violence" under 18 U.S.C. § 924(c) (count two), and brandishing a firearm during and in relation to a "crime of violence" under 18 U.S.C. § 924(c) (count four).[2] The counts arose from two separate incidents. On July 26, 2014, Pervis and his co-defendants attempted an armed robbery of the Shared Resources Credit Union in Pasadena, Texas; and two days later on July 28, 2014, they were successful in robbing that same establishment while using firearms.[3]

After a four-day trial in March of 2017, a jury found Pervis and Gray guilty on all four counts.[4] On October 26, 2017, the court sentenced Pervis to serve two concurrent terms of 125 months' imprisonment for the bank robbery counts (counts one and three), followed by a consecutive term of five years (60 months) for the firearms offense alleged in count two and another consecutive term

---

[1]Indictment, Docket Entry No. 1, pp. 1-2. For purposes of identification all page numbers reference the pagination imprinted on each docket entry by the court's electronic case filing ("ECF") system.

[2]Second Superseding Indictment, Docket Entry No. 221, pp. 1-4.

[3]Id. at 1-3.

[4]Verdict, Docket Entry No. 330 (Gray); Verdict, Docket Entry No. 331 (Pervis).

of 25 years (300 months) for the firearms offense alleged in count four, for a total of 485 months' imprisonment.[5] On April 3, 2018, Gray received a sentence of two concurrent terms of 150 months for the bank robbery counts (counts one and three), followed by a consecutive term of five years (60 months) for the firearms offense alleged in count two and another consecutive term of 25 years (300 months) for the firearms offense alleged in count four, for a total of 510 months' imprisonment.[6]

Pervis and Gray challenged their convictions on appeal, which were heard jointly. The Fifth Circuit affirmed both convictions after briefly summarizing the evidence admitted at trial as follows:

> On July 26, 2014, a group of armed men attempted to enter the Shared Resources Credit Union on Highway 225 in Pasadena, Texas, but its doors were locked. Appellants Pervis and Gray were among this group.
>
> Two days later, on July 28, Pervis and Gray returned to the credit union. Pervis, who rode in one vehicle with two associates, entered and robbed the credit union at gunpoint. Gray rode in another vehicle that provided surveillance. A third vehicle was for those carrying out the robbery to get away. After Pervis and his two carmates robbed the credit union, they did not get away cleanly, however. Patrol cars caught up to them as they left the area, spurring a high-speed chase that resulted in several arrests but also the escape of several other persons.
>
> Law enforcement tracked the defendants down in the ensuing months. Most agreed to be interviewed. In their telling, Gray organized the robbery. Defendant Keith

---

[5]Judgment in a Criminal Case, Docket Entry No. 434, p. 3.

[6]Judgment in a Criminal Case, Docket Entry No. 477, p. 2.

> McGee said that Gray recruited him, supplied him with the gun that McGee used in the robbery, and coordinated the group's efforts on July 28. Defendant Leroy Richardson also said that Gray recruited him and instructed the group throughout the robbery. Defendant Christopher Braziel likewise identified Gray as the planner of the robbery.

United States v. Pervis, 937 F.3d 546, 548-49 (5th Cir. 2019). Pervis challenged his conviction further by filing a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Section 2255 Motion"),[7] which this court denied on March 22, 2021.[8]

Pervis, who is currently 33 years of age, is serving his sentence of imprisonment at the United States Penitentiary in Victorville, California ("USP-Victorville").[9] He is not projected to be released until 2049.[10]

Invoking 18 U.S.C. § 3582(c)(1)(A), Pervis now seeks a reduction in sentence under a statutory amendment to the sentencing enhancement for firearms offenses found in 18 U.S.C. § 924(c), which was enacted while his direct appeal was pending.[11] Pervis argues that this change in the law poses an "extraordinary and compelling" reason to grant him relief because the second

---

[7]Section 2255 Motion, Docket Entry No. 561.

[8]Memorandum Opinion and Order, Docket Entry No. 582, p. 16.

[9]See United States Bureau of Prisons website, available at: https://www.bop.gov/inmateloc/ (last visited Jan. 24, 2023).

[10]See id.

[11]Defendant's Motion, Docket Entry No. 568, p. 2.

-4-

consecutive term of confinement that he received as the result of his conviction for brandishing a firearm during a crime of violence (count four) has been invalidated by the First Step Act of 2018, which amended 18 U.S.C. § 924(c) to clarify the circumstances in which a second consecutive or "stacked" sentence is applicable.[12] Arguing that the 25-year enhancement no longer applies to him, Pervis asks the court to vacate the unduly punitive sentence that he received under § 924(c) and grant him compassionate release from prison by modifying the judgment to a sentence of time served.[13]

On August 14, 2020, the court summarily denied Pervis's motion for compassionate release after considering a response from the government.[14] The court reconsidered that decision on its own motion and requested a supplemental response from the government after the Fifth Circuit decided United States v. Shkambi, 993 F.3d 388 (5th Cir. 2021), which the government addressed in its response to a similar motion for compassionate release filed by Gray.[15] The government opposes Pervis's motion for a reduction in sentence and,

---

[12]Id. at 2, 7-8.

[13]Id. at 12.

[14]Order, Docket Entry No. 571 (referencing Government's Response to Defendant's Motion for Compassionate Release ("Government's Response"), Docket Entry No. 570).

[15]Order, Docket Entry No. 591 (referencing Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 590). The motion for compassionate release filed by Gray has been denied. See Memorandum Opinion and Order, Docket Entry No. 600.

consistent with Shkambi, argues that the factors outlined in 18 U.S.C. § 3553(a) do not support his request for relief.[16]

## II. Analysis

Subject to limited exceptions a district court generally may not reduce or modify a defendant's sentence of imprisonment after it has been imposed. See 18 U.S.C. § 3582(c); Dillon v. United States, 130 S. Ct. 2683, 2690 (2010) (explaining that a judgment of conviction that includes a sentence of imprisonment is a "'final judgment'" that "may not be modified by a district court except in limited circumstances"). Pervis seeks relief under an exception that allows a district court to modify a term of imprisonment for compassionate reasons under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239-41 (Dec. 21, 2018), upon motion of the Director of the Bureau of Prisons "or upon motion of the defendant" after he has exhausted administrative remedies. 18 U.S.C. § 3582(c)(1)(A). A defendant is eligible for a sentence reduction under § 3582(c)(1)(A)(i) if the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. If the district court makes these two findings, then the court "may"

---

[16]Government's Response to Defendant's Motion for Compassionate Release in Light of Shkambi ("Government's Supplemental Response"), Docket Entry No. 593, pp. 5-10.

reduce the defendant's sentence "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable." Id. at § 3582(c)(1)(A).

In Shkambi the Fifth Circuit held that the policy statement found in U.S.S.G. § 1B1.13, which governs motions to reduce a term of imprisonment, is not binding and does not control the outcome of a motion for compassionate release filed by a defendant on his own behalf. See 993 F.3d at 392-93. However, the policy statement may be referred to when deciding such a motion solely for the purpose of informing the court's analysis "as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." United States v. Thompson, 984 F.3d 431, 433 (5th Cir.), cert. denied, 141 S. Ct. 2688 (2021); United States v. Jackson, 27 F.4th 1088, 1090 (5th Cir. 2022) (citing Thompson, 984 F.3d at 433).

To the extent that the policy statement may offer relevant guidance, Pervis does not show that his circumstances are comparable to any of the specific criteria listed in the current version of § 1B1.13, which are limited to a defendant's serious medical condition, advanced age, family circumstances, or "other reasons" as determined by the Director of the Bureau of Prisons. See U.S.S.G. § 1B1.13(A)-(D). Instead, Pervis attacks the validity of the sentence enhancement that he received for a firearms offense pursuant to 18 U.S.C. § 924(c), which at the time of his sentencing mandated a consecutive sentence of the statutory mandatory minimum

term of 25 years for a second offense. See Deal v. United States, 113 S. Ct. 1993, 1996-97 (1993) (construing § 924(c) to permit a "second or subsequent conviction" to be charged in the same indictment and adjudicated in the same proceeding as the first offense). When Gray raised a similar challenge during his appeal, the Fifth Circuit held that this claim was foreclosed by Deal. See Pervis, 937 F.3d at 553.

Pervis now contends that he is entitled to relief because, in addition to authorizing a defendant to file a motion for compassionate release on his own behalf, Section 403 of the First Step Act abrogated Deal and clarified that the sentence-stacking enhancement for a second firearms offense found in § 924(c) "applies only when a prior § 924(c) conviction arises from a separate case and already 'has become final.'" United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020) (quoting Pub. L. No. 115-391 § 403(a), 132 Stat. 5194, 5222 (2018)); see also United States v. Davis, 139 S. Ct. 2319, 2324 n.1 (2019) ("In 2018, Congress changed the law so that, going forward, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum." (alterations in original) (citation omitted)). This statutory change, however, is not retroactive to defendants who were sentenced before the First Step Act went into effect on December 21, 2018. See Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5221-22 ("This section, and the amendments made by this section, shall apply to any offense

that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."); United States v. Gomez, 960 F.3d 173, 177 (5th Cir. 2020) (holding that the First Step Act "itself plainly states that § 403 is not retroactive: It applies to an offense committed before its December 21, 2018 effective date only 'if a sentence for the offense ha[d] not been imposed as of such date.'" (alteration in original) (footnote omitted)). As a result, this intervening change in the law does not apply to Pervis, whose sentence was imposed on October 26, 2017.

The government concedes that if Pervis were sentenced today he would not be eligible for the consecutive 25-year mandatory minimum term of imprisonment that he received on count four of the Second Superseding Indictment and that his sentence for this offense under § 924(c) would likely have been 84 months.[17] Instead of 485 months, the government estimates that Pervis could have received a total sentence of 269 months' imprisonment.[18] Pervis contends that his disproportionately long sentence is unjust and constitutes an extraordinary and compelling reason to release him from confinement under § 3582(c)(1)(A)(i).[19]

---

[17]Government's Supplemental Response, Docket Entry No. 593, pp. 5-6.

[18]Id. at 6.

[19]Defendant's Motion, Docket Entry No. 568, p. 8.

Some courts have concluded that the sentence disparity created by the First Step Act and its amendment of the sentence-stacking statute for second convictions under § 924(c) may qualify as an extraordinary and compelling reason to reduce a defendant's term of imprisonment under § 3582(c)(1)(A). See, e.g., United States v. Rainwater, Criminal No. 3:94-CR-042-D(1), 2021 WL 1610153, at *2 (N.D. Tex. April 26, 2021) (citing United States v. Curtis, Case No. 01-CR-03-TCK, 2020 WL 6484185, at *7 (N.D. Okla. Nov. 4, 2020)). Other courts have reached the opposite conclusion. See, e.g., United States v. Guillory, Case No. 2:02-CR-20062-01, 2022 WL 3718087, at *4 (W.D. La. Aug. 26, 2022) (finding that "the discretionary authority conferred by § 3582(c)(1)(A) cannot be used to effect a sentencing reduction at odds with Congress's express determination in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively" and that § 3582(c)(1)(A) "does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction").

The Fifth Circuit has not yet decided whether nonretroactive changes to a sentencing statute can serve as extraordinary and compelling reasons for compassionate release. See United States v. Reed, Criminal No. 3:13-CR-481-B-5, 2022 WL 198405, at *3 (N.D. Tex. Jan. 21, 2022) (observing that "the Fifth Circuit has not decided whether nonretroactive changes to sentencing laws may

-10-

constitute extraordinary and compelling reasons for compassionate release and that courts in this circuit have reached conflicting answers" (citations omitted)). There is a split of authority among the circuits regarding this issue, with a majority of the courts of appeal holding that a nonretroactive change in the law cannot serve as grounds for a sentence reduction under § 3852(c)(1)(A). Compare United States v. Jenkins, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (describing the circuit split before joining the Third, Seventh, and Eight Circuits in holding that intervening but expressly nonretroactive sentencing statutes "may neither support nor contribute to a finding that extraordinary and compelling reasons warrant compassionate release") and United States v. McCall, — F.4th —, 2022 WL 17843865, at *15 (6th Cir. Dec. 22, 2022) (en banc) (concluding also that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction") with United States v. Chen, 48 F.4th 1092, 1097 (9th Cir. 2022) (joining the First, Fourth, and Tenth Circuits in holding that "district courts may consider § 403(a)'s non-retroactive changes to penalty provisions, in combination with other factors, when determining whether extraordinary and compelling reasons for compassionate release exist in a particular case").

Congress could have made the sentencing amendment found in § 403(a) of the First Step Act retroactive, but chose not to. Under these circumstances, the court concludes that the resulting

Case 4:15-cr-00060   Document 601   Filed on 01/27/23 in TXSD   Page 12 of 18

sentence disparity in Pervis's case does not qualify as an extraordinary and compelling reason to reduce his existing sentence, which would accord him the benefit of that nonretroactive amendment contrary to Congress's intent. See Jenkins, 50 F.4th at 1199 ("[B]y making its ameliorative amendment expressly nonretroactive, First Step Act § 403(b), 132 Stat. at 5222, Congress reaffirmed that the 25-year minimum remained appropriate for defendants already sentenced."); see also United States v. Thacker, 4 F.4th 569, 574 (7th Cir. 2021) (concluding that the discretionary authority to reduce a sentence under § 3582(c)(1)(A) "cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively").

Pervis does not otherwise show that a sentence reduction is consistent with the applicable sentencing factors found in 18 U.S.C. § 3553(a). Even assuming that sentencing disparity could serve as an extraordinary circumstance for purposes of § 3582(c)(1)(A), the defendant "still must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." Shkambi, 993 F.3d at 393 (explaining that a court considering "a prisoner's own motion" is bound "only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)"). Because decisions about whether to grant or deny a motion for compassionate release are "inherently discretionary,"

Ward v. United States, 11 F.4th 354, 360 (5th Cir. 2021), "a thorough factual record" is required, and a district court "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors[], for its decision." United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted). A defendant's motion for compassionate release may be denied if the defendant fails to persuade the sentencing judge that his early release would be consistent with the factors set out in § 3553(a). See United States v. Jackson, 27 F.4th 1088, 1089 (5th Cir. 2022).

The government argues that the § 3553(a) factors weigh against a reduction in Pervis's sentence.[20] Those factors require a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In doing so the court must consider

> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[20]Government's Supplemental Response, Docket Entry No. 593, pp. 5-10.

Id. at § 3553(a)(2). It is Pervis's burden to demonstrate that a reduction in sentence is warranted by these factors. See Ward, 11 F.4th at 361. He fails to meet that burden, and the record does not disclose any basis for a favorable exercise of discretion.

In Pervis's case the "seriousness of the offense" weighs heavily against a reduction in sentence. See 18 U.S.C. § 3553(a)(2)(A). According to the trial testimony, Pervis's involvement was significant. Co-defendant Howard Glaze testified that Pervis recruited him to participate in the robbery, asking him if he wanted to "hit a lick."[21] Glaze testified that he and Pervis were among the men who arrived at the Shared Resources Credit Union in a stolen truck and attempted to rob it on July 26, 2014.[22] Pervis, who was armed with a gun during that offense,[23] was upset because the door was locked and they were unable to complete the robbery.[24] On July 28, 2014, Glaze, Pervis, and another co-defendant (Keith McGee) returned to the Shared Resources Credit Union in a different stolen truck, entered the establishment, and robbed it at gunpoint.[25] The offense was captured on video

---

[21]Transcript of Voir Dire and Trial, Day 1 held on March 20, 2017, Docket Entry No. 450, pp. 113-14.

[22]Id. at 118.

[23]Transcript of Trial, Day 2 held on March 21, 2017, Docket Entry No. 451, p. 278.

[24]Id. at 281.

[25]Id. at 179-80, 284-91.

surveillance (Government's Exhibit No. 6),[26] and the evidence showed that Pervis was one of the robbers who jumped over the counter while pointing guns at the teller and other credit union employees.[27] One of those employees testified that she was "praying that [she] [didn't] die" when she and the other workers were ordered to lay on the floor by the armed robbers.[28]

As the robbers left the scene, a civilian followed them.[29] Glaze and Pervis shot at the follower before the driver, Christopher Braziel, led police on a high-speed chase.[30] According to the Presentence Investigation Report ("PSR"), the robbers stole $19,470 from the credit union that was never recovered.[31]

The government argues that Pervis's criminal history is another factor that makes him an unsuitable candidate for relief.[32] The record shows that Pervis admitted belonging to a criminal street gang known as the Hoover Cripps.[33] The PSR assessed a total

---

[26]Id. at 114-17.

[27]Id. at 288, 314, 320.

[28]Id. at 106.

[29]Id. at 293-94.

[30]Id. at 294-96, 300-01, 326-27, 329.

[31]PSR, Docket Entry No. 362, p. 16 ¶ 41 (reflecting that a total of $22,250 was taken during the bank robbery, but $2,780 was recovered).

[32]Government's Supplemental Response, Docket Entry No. 593, pp. 6-10.

[33]PSR, Docket Entry No. 362, p. 26 ¶ 101.

of 14 criminal history points, placing Pervis in Criminal History Category VI.[34] The PSR reflects that between the age of 16 and 24, when he robbed the Shared Resources Credit Union at gunpoint, Pervis incurred at least 11 convictions in state court for offenses including unauthorized use of a motor vehicle, burglary of a habitation, delivery of a controlled substance, delivery of cocaine, evading arrest or detention by police, theft, and multiple counts of criminal trespass.[35] In one case Pervis was charged with assault on a family member after he punched his sister in the face.[36] In another case Pervis was charged with aggravated assault causing bodily injury after he shot a man in the chest without provocation.[37]

The PSR also reflects that Pervis was involved in another bank robbery that preceded the offense that occurred at the Shared Resources Credit Union on July 28, 2014. On July 14, 2014, two weeks before the Shared Resources Credit Union robbery took place, Pervis, Gray, and the same group of perpetrators robbed the Texas Bay Area Credit Union in Houston.[38] Similar to the robbery at the Shared Resources Credit Union, Pervis arrived at the Texas Bay Area Credit Union in a stolen truck and then robbed the establishment at

---

[34] Id. at 24 ¶ 91.

[35] Id. at 19-24 ¶¶ 79-89.

[36] Id. at 21 ¶ 81.

[37] Id. at 21 ¶ 82.

[38] Id. at 19 ¶ 78.

gunpoint along with McGee and Glaze.[39] That robbery netted proceeds of $60,000 to $65,000.[40] There is no information in the PSR about whether Pervis or his confederates were ever charged in connection with this offense.

The government argues that Pervis's criminal history and violent conduct demonstrate that he poses a danger to the public, making a reduction in sentence improper.[41] At the sentencing hearing Pervis had nothing to say, and he has not accepted responsibility or shown any remorse.[42] Although Pervis alleges that he has been rehabilitated and poses no threat to the community, he provides no details in support of these claims and there is no evidence showing that he has completed any rehabilitative programs or renounced his gang affiliation.[43] Given the serious nature of his criminal record, Pervis has not established that the sentence imposed no longer serves the need to afford adequate deterrence for

---

[39] Id.

[40] Id.

[41] Government's Supplemental Response, Docket Entry No. 593, p. 10.

[42] Transcript of Sentencing, Docket Entry No. 454, pp. 7, 10-11.

[43] Defendant's Motion, Docket Entry No. 568, p. 7. Pervis argues further that his punishment is unjust because he only received a 485-month sentence after he rejected a plea agreement and asserted his right to a jury trial. See id. at 7, 11. Pervis provides no details about the terms of any plea agreement he may have been offered; and his decision to reject a plea, in hindsight, does not demonstrate that the sentence he received was unjust given his significant involvement in the charged offenses. Therefore, this argument does not form a basis for relief.

his criminal conduct or to protect the public from further crimes by him. See 18 U.S.C. § 3553(a)(2)(B)-(C). Pervis has served less than half of the 485-month term of imprisonment; and a reduction in sentence to time served would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

After considering 18 U.S.C. § 3582(c)(1)(A) and all of the relevant sentencing factors, the court concludes that none of those factors weigh in favor of a reduction in the 485-month sentence that Pervis received. Therefore, his motion for a reduction in sentence will be denied.

### III. Conclusion and Order

Accordingly, it is **ORDERED** that the Motion for Compassionate Release/Reduction of Sentence Pursuant to the First Step [Act] Sec. 605 under Title 18 U.S.C. [§] 3582(c)(1)(A) filed by Sonny Floyd Pervis (Docket Entry No. 568) is **DENIED**.

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 27th day of January, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE